UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD C. TURNER, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 12-7224 (SRC) |
| v. : | |
| : | OPINION |
| TIMOTHY BOYLE, et al., : | |
| : | |
| Defendants. : | |
| : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Defendants Timothy Boyle, Dennis O'Connor, Thomas Garcia, David Bednarz, Michael Lawlor, Andrew MacDonald, and Thomas Jones (collectively "Defendants") to dismiss the Complaint. (Docket Entry 8) Plaintiff Pro Se Harold C. Turner ("Plaintiff") has opposed the motion. (Docket Entry 14) The Court will rule on the papers submitted, and without oral argument. See Fed. R. Civ. P. 78. For the reasons that follow, the Court finds that it lacks personal jurisdiction over Defendants.

I. THE FACTS

According to the affidavit filed in support of the Complaint, Plaintiff is a talk radio host and media personality, broadcasting on various radio stations and over the Internet since 1998. In conjunction with these broadcasts, Plaintiff also ran web sites offering news, commentary, and discussion, as well as "teasers" for future broadcasts. As Plaintiff describes it,

> [t]he slogan . . . for the web sites was "Free Speech, no matter who doesn't like it." This slogan best described the content of the web

> sites, which intentionally included edgy, partisan, polemical views, routinely including crude political hyperbole to criticize government officials for official actions. The web sites were decidedly "right-wing, Conservative, Republican" in the views espoused; often employing the rhetoric of – and advocating solutions utilized by – the Founding Fathers of this nation. In common parlance, the content was very "politically-incorrect."

(P.'s Aff. 2)

On June 2, 2009, Plaintiff published a web story from his New Jersey home titled "State Restricts Catholics from Politics." The story described how two Connecticut legislators (Defendants Lawlor and MacDonald) had introduced legislation to bar Catholic priests and bishops from controlling church money in retaliation for the Catholic Church's opposition to same-sex marriage. After describing successful protests by Catholic parishioners to defeat the bill, the story detailed how Lawlor and MacDonald "appeared to retaliate yet again; this time through the Office of State Ethics (OSE), which opened an investigation into the Catholic Church for what they claimed was 'illegal political lobbying.'" (Id. at 3-4) Finally, the story relayed how one Catholic protester was arrested after calling MacDonald's office and stating that "there would be hell to pay" for what was being done to the Church. (Id. at 4)

Incensed by what he regarded as "a sinister pattern of misuse of government power, by militant homosexual legislators, to retaliate against political opposition to their sodomite political agenda," Plaintiff published an incendiary commentary beneath his news story, stating that "the state of Connecticut has become tyrannical and abusive," and that the tyranny "must be put down." (Id.) Plaintiff advocated that "Catholics in Connecticut take up arms and put down this tyranny by force." (Id. at 5) The commentary also contained what Plaintiff describes as a "'teaser' designed to pique the interest of the public so as to induce them to tune-in to an

upcoming show the next day . . . ." (Id.)  The teaser promised to release the home addresses of Lawlor and MacDonald, as well as that of Defendant Jones, who worked at the OSE.  "After all," the teaser went on, "if they are so proud of what they're doing they shouldn't mind if everyone knows where they live."  (Id. at 6)  Finally, the commentary declared that "[i]t is our intention to foment direct action against these individuals personally," adding "[t]hese beastly government officials should be made an example of as a warning to others in government: Obey the Constitution or die."  (Id.)

In response to the news story and commentary, Defendant Boyle, a Corporal in the Connecticut State Capitol Police, telephoned both the North Bergen Police Department ("NBPD") and Plaintiff to investigate the possible threat.  Plaintiff told Boyle that he had no intention of coming to Connecticut or hurting anyone and that he hoped no one would go "off the deep end" and do "something terrible."  (Id. at 7)  On June 3, 2009, Boyle sought, and was granted, an arrest warrant for the crime of Inciting Injury to Persons or Property in violation of Connecticut General Statute 53a-179a.  After Boyle faxed the warrant to the NBPD, the department called Plaintiff, and he voluntarily surrendered to police.

Plaintiff alleges that he was deprived of bail and held at Hudson County Correctional Center in Kearny, New Jersey, for approximately five days.  During that time, Plaintiff complains that he was forced to endure miserable, unsanitary, and dangerous conditions.  Plaintiff retained the services of an attorney and was ultimately freed on $25,000 bail and ordered to appear in Connecticut within 72 hours.  Plaintiff alleges that his criminal prosecution and the resulting hardship drove him into bankruptcy.

During the state trial, Plaintiff was confined at Hartford Correctional Center, where he

was apparently injured in a fight with another inmate. Despite what Plaintiff characterizes as numerous prosecutorial and judicial irregularities, improprieties, and Constitutional violations, Plaintiff was ultimately acquitted on all counts against him. Plaintiff has now brought suit against Defendants, seeking money damages for, among other things, false arrest, false imprisonment, tortious interference with business affairs, and numerous violations of Plaintiff's Constitutional rights.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendants argue that the Court has no personal jurisdiction over the Defendants. The Court agrees.

The concept of "personal jurisdiction," or "*in personam* jurisdiction," refers to a court's power over a particular defendant. Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). Specifically, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'" Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)). In the absence of an evidentiary hearing, a "plaintiff need only establish a prima facie case of personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).

"Pursuant to Rule 4(k) of the Federal Rules of Civil Procedure, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007)

(citing Provident Nat'l Bank v. California Federal Sav. & Loan Asso., 819 F.2d 434 (3d Cir. 1987); Fed. R. Civ. P. 4(k)(1)(A)).  New Jersey's long-arm statute, N.J. Court Rule 4:4-4, allows a court to assert personal jurisdiction over nonresidents to the extent permitted by the Due Process Clause of the Fourteenth Amendment.  Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012).  In other words, the court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with New Jersey such as not to "offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe, supra, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

"There are two types of personal jurisdiction: general and specific."  Spuglio v. Cabaret Lounge, 344 Fed. Appx. 724, 725 (3d Cir. 2009).  "If a party is subject to the general jurisdiction of a state, that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum."  Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).  In contrast, a party subject to specific jurisdiction may only be forced to answer for injuries that "arise out of or relate to" his activities in or directed at the forum state.  Metcalfe, supra, 566 F.3d at 334.

Plaintiff has not made out even a prima facie case that this Court has general jurisdiction over the Defendants.  "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action."  Id. at 334 (quoting Helicopteros Nacionales De Colom. v. Hall, 466 U.S. 408, 416 (1984)).  Plaintiff has only alleged that one defendant, Boyle, had any contact with New Jersey.  Therefore this Court has no general jurisdiction over Defendants O'Connor, Garcia, Bednarz, Lawlor, MacDonald, and Jones.  Plaintiff also cannot establish

5

general jurisdiction over Boyle. According to the Complaint and its supporting affidavit, Boyle contacted the Plaintiff and the NBPD and also swore out a fraudulent "fugitive-from-justice warrant" for Plaintiff's arrest. Boyle's affidavit states that he did not regularly conduct business in New Jersey; did not maintain an office, residence, postal address, or telephone listing in New Jersey; did not own property in New Jersey; and did not anticipate at any time being called into court in New Jersey. Plaintiff has not disputed any of this evidence.[1] Therefore, the Court concludes that Boyle did not have the kind of "consistent and systematic" contacts with New Jersey necessary to establish general jurisdiction. See Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 34 (3d Cir. 1993).

Plaintiff has also failed to carry his burden to establish that this Court has specific jurisdiction over the Defendants. As Plaintiff's Complaint, affidavit, and briefs only attempt to establish Boyle's contacts with the State of New Jersey, specific jurisdiction over the other defendants will not lie.

Specific jurisdiction typically involves a three-part inquiry:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice.

Marten, supra, 499 F.3d at 296. This test requires that a "defendant must have 'purposefully

---

[1] Because a motion to dismiss for lack of personal jurisdiction "inherently . . . requires resolution of factual issues outside the pleadings," "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984). Therefore the Court considers the factual evidence offered by all parties in resolving Defendants' personal jurisdiction objections.

availed itself of the privilege of conducting activities within the forum.'" O'Connor, supra, 496 F.3d at 317 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotations omitted).  In other words, the "test prevents a defendant from 'be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts' . . . ." Id. at 297 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)).

In the Third Circuit, an allegation of an intentional tort invokes a "slightly refined" test with a "more demanding relatedness requirement." Wolstenholme v. Bartels, No. 11-3767, 2013 U.S. App. LEXIS 1314, at *10-11 (3d Cir. Jan. 18, 2013) (citing O'Connor, supra, 496 F.3d at 317; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 99 (3d Cir. 2004)).  This "effects test" was first outlined by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789-91 (1984).  Under Calder, a court may assert personal jurisdiction over a nonresident tortfeasor if

> (1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, supra, 499 F.3d at 297.  Plaintiff alleges both common-law intentional torts (e.g., false imprisonment) as well as claims under 42 U.S.C. § 1983.  Although there is some authority for analogizing § 1983 claims to intentional torts for the purposes of determining which specific

jurisdiction test applies,[2] this Court will assess Plaintiff's § 1983 claims under the traditional three-part inquiry and the common-law intentional tort claims under Calder.

With respect to the common-law claims, this Court cannot conclude that Boyle so purposefully directed his activities at New Jersey that he could have reasonably expected to be haled into court in this state. The parties fundamentally agree about the nature and scope of Boyle's contacts with the State of New Jersey: First, soon after the news story and commentary were published, Boyle called the NBPD to inquire about Plaintiff. Boyle also telephoned Plaintiff directly "to inquire about the story." (P.'s Aff. 7) These initial, purely investigatory phone calls cannot be considered components of an alleged rights violation, and Plaintiff does not appear to allege or argue that they were. As such, the phone calls are not properly considered contacts capable of establishing this Court's personal jurisdiction. Second, Boyle submitted an application for an arrest warrant, which was signed by Connecticut State's Attorney Gail P. Hardy and Connecticut Superior Court Judge Julia D. Dewey. That action involved no contact with the State of New Jersey. Third, Boyle entered Plaintiff into the National Crime Information Center ("NCIC") as a "wanted person," informing police officials that a warrant had been issued for Plaintiff's arrest in the State of Connecticut. While Plaintiff alleges that this act constituted a violation of his constitutional rights, entry of Plaintiff's name into a national database from within the State of Connecticut does not count as a contact with the State of New Jersey. For the purposes of establishing this Court's jurisdiction, Boyle's lone contact with New Jersey was his June 3, 2009, fax of the arrest warrant to the NBPD. This solitary and discrete contact simply

---

[2] See Marten, supra, 499 F.3d at 299 n.3 (applying Calder effects test to both defamation and § 1983 claims, but noting defendants' acquiescence).

cannot, by itself, satisfy Plaintiff's burden of establishing personal jurisdiction. Plaintiff has failed to show that Boyle "purposefully availed [himself] of the privilege of conducting activities within" the State of New Jersey. See O'Connor, supra, 496 F.3d at 317. In short, the Court cannot find that Boyle "should [have] reasonably anticipate[d] being haled into court" in New Jersey. See Remick, supra, 238 F.3d at 255.

This Court's conclusion is also supported by Bush v. Adams, a factually similar case in which a district court held that "[m]erely obtaining an arrest warrant for someone who is known to be in another state is not sufficient to subject the officer obtaining the warrant to personal jurisdiction in that state." No. 07-4936, 2008 U.S. Dist. LEXIS 101649, at *33-34 (E.D. Pa. Nov. 3, 2008). In Bush, the nonresident defendant officers had greater and more frequent contact with the forum state than Boyle did in the present case, yet the Court still held that the officers had not "purposely availed themselves of any privilege of acting in Pennsylvania, beyond the privilege of having their arrest warrants honored." Standing alone, this was not enough for the officers "to have reasonably anticipated being haled into a Pennsylvania court." Id. at *34-35.

Plaintiff has similarly failed to establish this Court's jurisdiction over Boyle with respect to the intentional tort claims. The Third Circuit strictly construes the Calder effects test:

> In applying this test, we have underscored that the scope of the law established in Calder is narrow, employing "a conservative reading" to reflect the fact that Calder did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998). Moreover, "the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Marten, 499 F.3d at 297. Therefore, "[o]nly if the 'expressly aimed' element of the effects test is met

need we consider the other two elements." Id.

Bartels, supra, 2013 U.S. App. LEXIS 1314 at *11-12.  For reasons that have already been discussed, Plaintiff has failed to satisfy the third prong of the Calder test.  In faxing Plaintiff's arrest warrant to the NBPD, Boyle cannot be said to have "expressly aimed" his tortious conduct at New Jersey.  Neither can New Jersey be considered the focal point of Boyle's tortious activity – judged either quantitatively or qualitatively, Connecticut was unquestionably the locus of the allegedly tortious conduct.

Plaintiff has also failed to satisfy the second prong of the Calder analysis; that is, Plaintiff has not demonstrated that he felt the brunt of the harm in New Jersey, such that it can be said to be the focal point of the harm.  See Marten, supra, 499 F.3d at 297.  Although Plaintiff initially turned himself over to police and was confined for a period of five days in New Jersey, the bulk of the harm suffered from Boyle's allegedly tortious conduct took place in Connecticut – that is where Plaintiff was charged, forced to appear for numerous status conferences, jailed, tried, and bloodied in a fight with a fellow inmate.

**B.    Dismissal or Transfer**

A court without personal jurisdiction over the defendants has the option of dismissing the action or transferring the case to another district pursuant to 28 U.S.C. § 1406(a).  Goldlawr v. Heiman, 369 U.S. 463, 466 (1962); La Rose v. Sponco Mfg., Inc., 712 F. Supp. 455, 460-61 (D.N.J. 1989).  This Court must now decide whether dismissal or transfer of this action is proper.

A district court has broad discretion when it comes to deciding whether to transfer or dismiss a case for lack of personal jurisdiction and improper venue.  Cote v. Wadel, 796 F.2d

981, 985 (7th Cir. 1986).  This Court finds that the United States District Court for the District of Connecticut will almost certainly have personal jurisdiction over all Defendants in this matter.  As such, transfer, rather than dismissal, may be appropriate in this case.  Accordingly, Plaintiff will be afforded 30 days from the date of the accompanying Order to consent to transfer to the District of Connecticut.  If Plaintiff does not consent to the transfer by May 8, 2013, then the case will be dismissed without prejudice.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: April 8, 2013