# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

HAROLD TURNER,
     Plaintiff,

     v.

TIMOTHY BOYLE, et al.,
     Defendants.

No. 3:13-cv-616 (SRU)

## ORDER AND RULING ON
## DEFENDANTS' MOTION TO DISMISS

This case arises from the State of Connecticut's arrest and prosecution of the *pro se* plaintiff, Harold Turner, after he published to his website commentary denouncing two Connecticut legislators for their purported role in "infringing on the constitutional rights" of the Catholic Church and encouraging his readership to "take up arms" and "put down by force" those legislators. Turner was prosecuted for several crimes under Connecticut law and ultimately acquitted.

After his acquittal, Turner filed with the U.S. District Court for the District of New Jersey a complaint against eight Connecticut state employees asserting six types of claims: (1) conspiracy to deprive Turner of his constitutional rights, in violation of 42 U.S.C. §§ 1983 and 1985; (2) criminal conspiracy to deprive Turner of his constitutional rights, in violation of 18 U.S.C. § 242; (3) malicious prosecution; (4) common law malicious prosecution; and (5) tortious[1] interference with business relations. *Turner v. Boyle*, No. 2:12-cv-7224 (D.N.J. Nov. 21, 2012) (doc. 1). U.S. District Judge Stanley R. Chesler then transferred Turner's case to the U.S. District Court for the District of Connecticut, pursuant to 28 U.S.C. § 1406(a), for lack of personal jurisdiction (doc. 30), and the case was assigned to me (doc. 31).

---

1.  Although Turner describes his claim as "tortuous interference," his pleadings make clear that he intended to bring a tort claim.

The defendants move to dismiss Turner's amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons stated below, I **grant** the defendants' motion to dismiss the Amended Complaint in its entirety and with prejudice.

## I.   Standard of Review

The court must liberally construe the pleadings of *pro se* plaintiffs.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal citations omitted).  Materials submitted by a non-moving *pro se* plaintiff are interpreted to "raise the strongest arguments [those materials] suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal citations omitted).

When reviewing a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  Nevertheless, a *pro se* party's status does not relieve him of the burden of alleging sufficient facts upon which a recognized legal claim can be based, *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986), nor does it exempt a party from "compliance with relevant rules of . . . substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  The "duty to liberally construe a plaintiff's complaint" is not "the equivalent of a duty to re-write it." 2 Moore's Federal Practice § 12.34(4)(a), at 12–72.7 (2005) (internal citations omitted).  When possible, the court should not dismiss an action "without leave to amend once when a liberal

reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* complaint "should not be dismissed [with prejudice] for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

The party who seeks to exercise the jurisdiction of the court bears the burden of establishing the court's jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994). To survive a Rule 12(b)(1) motion, a plaintiff must clearly allege facts demonstrating that the plaintiff is a proper party to invoke judicial resolution of the dispute. *Id.* Although the plaintiff bears the ultimate burden of establishing jurisdiction by a preponderance of the evidence, "until discovery takes place, a plaintiff is required only to make a prima facie showing by pleadings and affidavits that jurisdiction exists." *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996).

"When considering a party's standing, [the court] 'accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Thompson*, 15 F.3d at 249 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). A court may refer to evidence outside the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If a plaintiff has failed to allege facts supportive of standing, it is within the court's discretion to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of standing. *Thompson*, 15 F.3d at 249.

3

B. <u>Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)</u>

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## II.  Background

The following factual allegations are set forth in Turner's Amended Complaint and its accompanying exhibits (doc. 47).  Turner is a self-described "talk-radio host, media personality, and member of the press" who ran an internet radio show and website from his home in North Bergen, New Jersey.  Am. Compl. ¶¶ 3–4.  On June 2, 2009, Turner published to his website a story about a legislative proposal in Connecticut which he stated would have barred Catholic clergy from control of church finances.  *Id.* ¶ 4.  Turner described the proposed legislation as "a direct government assault upon the Catholic Church, in absolute violation of the First Amendment to the Constitution for the United States."  *Id.*, Ex. 1 at 4 (doc. #47-2).  He continued:

> It is very clear to us at the Turner Radio Network that the state of Connecticut has become tyrannical and abusive.  It is actively and aggressively attempting to directly interfere with the internal governance of a church and the free exercise of religion.  It is retaliating against citizens for exercising their right to petition for redress of grievances.  This is tyranny and it must be put down.

> While filing a lawsuit is quaint and the "decent" way to handle things, we at TRN believe that being decent to a group of tyrannical scumbags is the wrong approach.  It's too soft.

> Thankfully, the Founding Fathers gave us the tools necessary to resolve tyranny: The Second Amendment.

> TRN advocates Catholics in Connecticut take up arms and put down this tyranny by force.  To that end, THIS WEDNESDAY NIGHT ON "THE HAL TURNER SHOW" we will be releasing the home addresses of the Senator and Assemblyman who introduced [the legislation] as well as the home address of Thomas K. Jones . . . .

> It is our intent to foment direct action against these individuals personally.  These beastly government officials should be made an example of as a warning to others in government: Obey the Constitution or die.

> If any state attorney, police department or court thinks they're going to get uppity with us about this; I suspect we have enough bullets to put them

5

down too.

*Id.*  The public officials referred to in Turner's commentary included defendants Michael Lawlor and Andrew MacDonald, who were then co-chairmen of the Connecticut State Legislature's Judiciary Committee, and defendant Thomas Jones, an attorney with the Connecticut Office of State Ethics.  *Id.* ¶ 4.

That day, defendant David Bednarz, at the time a member of Lawlor's staff, discovered Turner's commentary and told Lawlor about that commentary.  *Id.* ¶ 39.  Lawlor then brought copies of the commentary to the state police.  *Id.*  Defendant Timothy Boyle of the Connecticut State Capitol Police telephoned Turner to ask about the commentary.  *Id.* ¶ 5.  On June 3, 2009, Boyle filed a criminal complaint against Turner and applied for a felony arrest warrant.  *Id.* ¶ 5. Defendant Gail P. Hardy, a State's Attorney, signed the application.  *Id.* ¶ 5.   The complaint alleged that there was probable cause that Turner had violated Connecticut General Statutes section 53a-179a(a) ("Inciting Injury to Persons"), and the warrant application alleged that Turner was a "Fugitive from Justice."  Am. Compl. ¶ 5.  Connecticut Superior Court Judge Julia Dewey issued the arrest warrant,[2] and Boyle entered the warrant into the National Crime Information Center ("NCIC") database, and input the code for "Harassing Communications." Am. Compl. ¶ 12.

On June 3, 2009, upon receipt of the Connecticut warrant, North Bergen police telephoned Turner at home to notify him of the Connecticut warrant.  *Id.* ¶ 14.  Turner voluntarily surrendered to the North Bergen police that same day.  *Id.*  Turner was initially

---

2.   Although Turner does not bring claims against Connecticut Superior Court Judges Julia Dewey and Carl Schuman, in a section titled "Local Judge Influenced by Defendants," he alleges that both judges acted "in concert with the [defendants'] conspiracy" to deprive Turner of his constitutional rights.  Am. Compl. ¶¶ 11, 33–38.  Turner then attempts to impute the decisions of those judges to Lawlor and MacDonald, arguing that because Lawlor and MacDonald presided over the appointment of judges, both state judges issued rulings in contravention of Turner's constitutional rights because each feared retribution from Lawlor and MacDonald.  *Id.* ¶ 11, 35–36.

denied bail because he had been classified as a fugitive, and he was imprisoned for approximately five days pending his arraignment.  *Id.* ¶¶ 14, 17.  Turner then waived extradition to Connecticut.  *Id.* ¶ 19.

The New Jersey judge presiding over Turner's arraignment set bail at $25,000, as requested by Connecticut officials, and authorized transfer and application of the funds provided for Turner's bail in New Jersey to Connecticut.  *Id.* ¶ 19.  Turner posted bail in New Jersey in the amount requested by Connecticut officials, but days later, defendant and former Senior Assistant State's Attorney Dennis O'Connor informed Turner's New Jersey counsel that Connecticut would not accept bail from New Jersey.  *Id.* ¶¶ 19, 20.  Connecticut required that Turner post bail in Connecticut or face incarceration upon his arrival in Connecticut.  *Id.* ¶ 20.  Turner posted a second bond and began to travel between his home in New Jersey and Hartford, Connecticut for proceedings related to his criminal prosecution.  *Id.* ¶¶ 20, 23, 26.

Upon Turner's arrival in Connecticut, the State dropped its Harassing Communications charge and charged Turner with three counts of Inciting Injury to Persons or Property.  *Id.* ¶ 24.  On September 2, 2011, approximately two years after the publication of Turner's commentary and three days before trial, Connecticut charged Turner with Threatening in the Second Degree, a misdemeanor.  *Id.* ¶ 32.  During the pendency of Turner's prosecution, O'Connor retired and was replaced by defendant and Assistant State's Attorney, Thomas Garcia.  *Id.* ¶ 31.

Although Turner had hired local counsel in New Jersey and Connecticut, he later declared bankruptcy and could no longer afford counsel.  *Id.* ¶¶ 26–27.  Connecticut appointed Turner a public defender, but Turner requested to represent himself with his public defender appearing as "stand-by counsel."  *Id.* ¶ 38.  Around September 2011, Turner was acquitted on all

7

counts in the Connecticut prosecution. *Id.* ¶ 45.  He then filed his civil complaint in the District

of New Jersey on November 21, 2012.

## III.   Discussion

Turner raises twelve counts against the defendants, whom he has sued in their individual

and official capacities.  He alleges that Boyle signed a false criminal complaint, wrongly accused

Turner of the state crimes of harassing communications and incitement, and "recklessly,

wantonly, and maliciously" sought and obtained an arrest warrant "when [Boyle] knew that

[Turner] had committed" no crime in Connecticut, all in an effort to deprive Turner of his First

Amendment rights of free speech and freedom of the press, and as a form of First Amendment

retaliation, in violation of 42 U.S.C. §§ 1983 & 1985 (Counts One and Two).[3]  Am. Compl. 30–

31.  Turner additionally alleges that Bednarz, Boyle, Hardy, Jones, Lawlor, MacDonald and

O'Connor deprived Turner of his First Amendment rights of free speech and freedom of the

press, and Turner's Fourteenth Amendment right to equal protection, by ensuring Turner was

arrested and incarcerated, and thus unable to broadcast his radio show on June 3, 2009 (Count

Seven).  *Id.* 47.  I construe that allegation as claims of First Amendment interference and

retaliation, as well as a Section 1983 claim brought under a theory of malicious prosecution.

Turner also alleges that Boyle violated Turner's Fourteenth Amendment right to equal

protection (Count Three), and that Bednarz, Boyle, Hardy, Jones, Lawlor, MacDonald and

O'Connor violated Turner's Fourth Amendment right to be free of unlawful seizure (Counts

---

3.   Although Turner organizes his claims as separate theories of liability for a claim of malicious prosecution and conspiracy to commit malicious prosecution, his causes of action primarily turn on whether each defendant's alleged behavior deprived him of, or contributed to a conspiracy to deprive him of, the "rights privileges or immunities secured by the Constitution and laws [of the United States]."  42 U.S.C. §§ 1983 & 1985.  Accordingly, I construe his claims regarding his federal constitutional rights under those provisions of the U.S. Code.  I additionally construe Turner's Amended Complaint to assert a claim under Connecticut common law for malicious prosecution.

Four and Five) when Boyle classified Turner as a "fugitive" in the National Crime Information Center ("NCIC"), resulting in Turner's arrest and five-day detention. *Id.* 32–34. Turner also alleges that his "fraudulent" designation as a fugitive required bail to be posted in New Jersey and in Connecticut, and that that requirement violated Turner's Eighth Amendment "right to be free from excessive bail." *Id.* ¶ 15.

Turner further alleges that Boyle committed malicious prosecution, or contributed to a conspiracy to commit malicious prosecution, when Turner incurred costs related to his defense against his criminal prosecution in Connecticut (Count Six). He also alleges that Hardy and Garcia engaged in either conspiracy or in malicious prosecution by charging Turner with misdemeanor Threatening in the Second Degree, a charge for which Turner argues there was no probable cause (Count Eight). *Id.* 37. He alleges that defendants Hardy, Garcia and O'Connor required Turner be prosecuted in Connecticut, in violation of his Sixth Amendment speedy trial rights and right to be tried "by an impartial jury *of the state and district wherein the crime shall have been committed.*" *Id.* 15 (emphasis in original). He additionally argues that Hardy and O'Connor failed to seek a grand jury indictment, in violation of Turner's Fifth and Fourteenth Amendment rights to due process.[4] *Id.* 21–22. I construe Turner's malicious prosecution allegations as two causes of action: a claim of Section 1983 malicious prosecution, and a second claim alleging common law malicious prosecution.

Turner alleges that Lawlor, MacDonald and Jones have supervisorial liability for Counts One through Eight because they "either conspire[d] with, induce[d], manipulate[d], bull[ied], coerce[d] or intimidate[d] the . . . Capitol Police into unleashing against" Turner, resulting in

---

4.   Although Turner describes the alleged Fifth and Fourteenth Amendment violations as violations of his right to equal protection and substantive due process, the circumstances alleged in his Amended Complaint indicate that Turner intended to bring a claim on procedural due process grounds.

deprivations of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights (Counts Nine and Ten). *Id.* 38–39.

Finally, Turner alleges that defendants Bednarz, Boyle, Hardy, Jones, Lawlor, MacDonald and O'Connor violated 18 U.S.C. § 242 (criminal deprivation of civil rights), and he alleges that those defendants engaged in common law malicious prosecution and tortiously interfered with business relations (Counts Eleven and Twelve). *Id.* 40–41. He requests relief jointly and severally in the form of "actual, general, special, exemplary, consequential, and punitive damages, as well as attorneys' fees and costs" in the amount of fifty-million dollars. *Id.*

In their motion, the defendants argue that claims against defendants Hardy, Garcia and O'Connor are barred by the doctrine of absolute immunity, Defs.' Mot. to Dismiss Br. 15–18 (doc. 51); allegations against the remaining defendants are barred by the doctrine of qualified immunity, *id.* 23–27; and Turner's Section 1983 claims and tortious interference claim is time-barred. *Id.* 9–14. The defendants also move to dismiss any remaining claims for failure to state a claim upon which relief can be granted. *Id.* 21–23, 27–28. I discuss absolute and sovereign immunities, then the statute of limitations for any remaining claims, whether Turner has pleaded circumstances that plausibly support any claims that are not barred, and finally, whether qualified immunity applies.

A. Sovereign Immunity:  Official-Capacity Claims

The Eleventh Amendment divests the court of subject matter jurisdiction over claims for monetary damages brought against the State, or against a state employee acting in his official capacity, unless a State has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). For the reasons set forth, this court lacks subject matter jurisdiction with respect to Turner's federal and state claims for monetary damages against all

defendants in their official capacities; accordingly, those claims are dismissed with prejudice pursuant to Rule 12(b)(1).

    1.  *Federal Claims (Sections 1983 and 1985)*

Turner has sued all defendants in their official and individual capacities pursuant to sections 1983 and 1985 of Title 42 of the U.S. Code, and he has requested relief only in the form of monetary damages.  Because Connecticut has not waived its sovereign immunity with respect to claims brought under section 1983 or section 1985 for monetary damages, this court lacks subject matter jurisdiction to adjudicate Turner's official capacity claims.

"A suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity."  *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982); *Miller v. Egan*, 265 Conn. 301, 311 (2003) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990)).  A plaintiff may not bring suit under section 1983 or section 1985 for money damages; only suits for equitable relief may be brought against a State.  *Quern v. Jordan*, 440 U.S. 332, 338 (1979).  State officials acting in their official capacities may only be sued for injunctive or declaratory relief, unless the alleged unconstitutional or wrongful conduct is fairly attributable to the officer in his individual capacity and damages will not be paid from the state treasury.  *Alden v. Maine*, 527 U.S. 706, 757 (1999); *Graham*, 473 U.S. at 165–66 (noting that an action brought under Section 1983 against a legislator in his official capacity is a suit against the State).  Based on the assertions set forth in his Amended Complaint, Turner's official-capacity claims are in fact claims against the State of Connecticut.

  Connecticut has not waived its sovereign immunity with respect to claims for money damages brought under section 1983 or section 1985.  *Morneau v. Connecticut*, 150 Conn. App.

237, 251–53, *cert. denied*, 312 Conn. 926 (2014).  Turner has not sought equitable relief, but

rather, seeks money damages and attorneys' fees[5] and costs.  Thus, sovereign immunity requires

dismissal of all Turner's official-capacity claims for monetary damages.

2.  *State Claims*

Turner also has brought two common law claims against the defendants in their official

capacities; one for malicious prosecution, and the other for tortious interference with business

relations.  Prior to evaluating whether his claims are barred by the doctrine of sovereign

immunity, the court must determine whether to apply federal or state choice-of-law principles,

and, based on that determination, identify which substantive law governs Turner's common law

claims.

a.  Determining Whether State or Federal Choice-of-Law Principles Apply

When a plaintiff brings a federal claim with pendent state law claims, a district court

must first determine whether to apply federal or state choice-of-law principles.  The U.S.

Supreme Court has instructed federal courts to apply federal choice-of-law principles only if

there is "a significant conflict between federal policy or interest and the use of state law."

*Atherton v. Fed. Deposit Ins. Corp.*, 519 U.S. 213, 218 (1997); *see also Wells Fargo Asia Ltd. v.*

*Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991) ("In federal question cases, we are directed to

apply a federal common law choice of law rule to determine which jurisdiction's substantive law

should apply.").  There is no federal policy or statute regarding common law claims for

malicious prosecution or tortious interference with business relations, and because there is no

federal general common law, it is appropriate to apply the choice-of-law rules of the forum

---

5.   As a general matter, a *pro se* litigant is not entitled to attorneys' fees, although he may be able to recover costs.
*Kay v. Ehrler*, 499 U.S. 432, 435, 438 (1991) (attorneys' fees); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684,
694–95 (2d Cir. 1998) (same); *but see Zalaski v. City of Hartford, Conn.*, 723 F.3d 382, 395 (2d Cir. 2013) (costs).

state—in this case, Connecticut.[6]  *See Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d

Cir. 1994) (a district court may apply state's choice-of-law rules when jurisdiction is based on

both federal question and diversity of citizenship); *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d

Cir. 1989) ("A federal court . . . adjudicating state law claims that are pendent to a federal claim

must apply the choice of law rules of the forum state.") (citing *Klaxon Co. v. Stentor Elec. Mfg.

Co.*, 313 U.S. 487, 496 (1941)).  Accordingly, I apply Connecticut choice-of-law principles to

Turner's pendent common law torts claims.

        b.   Connecticut Choice-of-Law Rules

        Until recently, Connecticut choice-of-law principles adopted the old rule of *lex loci

delicti* ("place of injury"), which provided that the law of the state in which a tort was committed

governed the parties' claims.  *Gibson v. Fullin*, 172 Conn. 407, 411 (1977).  Over the past thirty

years, however, Connecticut courts also have applied the "most significant relationship" analysis

set forth in the Restatement (Second) of Conflict of Laws for tort claims when "application of the

doctrine of *lex loci* would produce an arbitrary, irrational result."  *Macomber v. Travelers Prop.

& Cas. Corp.*, 277 Conn. 617, 640 (2006) (citing *O'Connor v. O'Connor*, 201 Conn. 632, 648–

50 (1986)); *accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d Cir. 2009); *see also Jaiguay*

---

6.    Even if I were to apply federal choice-of-law principles, the outcome is the same.  Federal choice-of-law rules
provide that federal courts should apply the law of the jurisdiction having the greatest interest in the litigation.  *Eli
Lilly Do Brasil, Ltda. v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007); *see also Barkanic v. Gen. Admin. of
Civ. Aviation of China*, 923 F.2d 957, 960–61 (2d Cir. 1991) (federal court deciding federal question may apply state
choice-of-law rules if those rules would best effectuate congressional intent); *Corporación Venezolana de Fomento
v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980), *cert. denied*, 449 U.S. 1080 (1981).  Federal courts look to
the factors set forth in section 145 of the Restatement (Second) of Conflict of Laws to determine the "most
interested" state—the same analysis conducted under Connecticut choice-of-law rules. *Compare Eli Lilly Do Brasil,
Ltda.*, 502 F.3d at 81, and *O'Connor v. O'Connor*, 201 Conn. 632, 650 (1986).  Applying Connecticut choice-of-law
principles also accords with federal case law, which uses the forum state's statute of limitations for personal injury
claims to determine the statute of limitations and accrual periods for Section 1983 claims.  *Wallace v. Kato*, 549
U.S. 384, 388 (2007) ("the statute of limitations . . . is that which the State provides for personal-injury torts")
(citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)); *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015); *see also
Am. Elec. Power Co., Inc. v. Connecticut*, 131 S. Ct. 2527, 2536 (2011) (absent a demonstrated need for a federal
rule, the federal courts may "borrow" state law).

*v. Vasquez*, 287 Conn. 323, 349 n.20 & 350 n.21 (2008) (noting with approval Connecticut's trend towards using the "most significant relationship" framework when determining choice of law with respect to tort claims). The factors for determining which state has the most significant relationship to a tort claim include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered. *Dugan v. Mobile Med. Testing Servs., Inc.*, 265 Conn. 791, 801–02 (2003) (citing Restatement (Second) of Conflict of Laws § 145 (1971)). Those factors must be evaluated by "their relative importance with respect to the particular issue." *Jaiguay*, 287 Conn. at 353; *see also Glenwood Sys., LLC v. Med-Pro Ideal Solutions, Inc.*, 438 F. App'x 27, 29 (2d Cir. 2011) (summary order).

      i.   Malicious Prosecution

Under both federal and Connecticut choice-of-law rules, a claim for malicious prosecution is governed by the laws of the state in which the legal proceedings took place, unless a more significant relationship exists in another state. *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003); *see also* Restatement (Second) of Conflict of Laws § 155 (1971); *Chien v. Commw. Biotechs., Inc.*, No. 3:12-cv-1378 (AWT), 2013 WL 4482750, at *4–5 (D. Conn. Aug. 21, 2013). In this case, however, there is no conflict between Connecticut and New Jersey common law with respect to malicious prosecution claims. New Jersey law requires that a plaintiff prove the following elements to prevail on his malicious prosecution claim: (1) a criminal action was instituted by the defendant against the plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action terminated favorably for the plaintiff. *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009). To prevail on a

14

malicious prosecution claim under Connecticut law, a plaintiff must prove those same elements. *Brooks v. Sweeney*, 299 Conn. 196, 210–11 (2010).  Thus, it would not be arbitrary or prejudicial to apply Connecticut law to Turner's malicious prosecution claim.

Even if there were a conflict between the laws of New Jersey and Connecticut, both the *lex loci* and significant injury tests favor applying Connecticut law to Turner's common law malicious prosecution claim.  The criminal proceedings referenced in Turner's complaint all took place in Connecticut.  Moreover, the conduct giving rise to Turner's alleged injury, and the injury itself, occurred in Connecticut.  Although Turner is a citizen of New Jersey, the relationship between the parties was centered almost entirely in Connecticut.  Thus, Connecticut law controls Turner's common law malicious prosecution claim.

### ii.   Tortious Interference with Business Relations

Connecticut's "most significant relationship" test determines whether to apply Connecticut or New Jersey law to Turner's tortious interference with business relations claim.[7] Turner alleges his harm primarily took place in New Jersey.  Based on Turner's description of his program, however, it is clear that his website and radio show were designed to reach a national market with a geographically-broad audience and readership.

Applying the factors described in section III.A.2.b, the place of "injury" to Turner's

---

7.   Connecticut and New Jersey define tortious interference with business relations in distinct terms.  To sustain a claim for tortious interference with business relations under Connecticut law, the plaintiff must establish (1) that a business relationship existed, (2) that there was an intentional and improper interference with that relationship, and that that interference (3) resulted in the plaintiff's loss of the benefits of the relationship.  *Am. Diamond Exch. v. Alpert*, 101 Conn. App. 83, 90, *cert. denied*, 284 Conn. 901 (2007).  Conversely, New Jersey law requires that a plaintiff demonstrate that he (1) had an existing or reasonable expectation of economic benefit or advantage; (2) that the defendant knew of that expectancy; (3) that the defendant's wrongful and intentional conduct interfered with that expectancy; (4) that there was a reasonable probability that the plaintiff would have received the anticipated benefit in the absence of interference; and (5) that the plaintiff was harmed by the defendant's interference.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)).

business relations occurred nationwide and is not limited to New Jersey.[8]  The allegedly tortious conduct that caused Turner's injury took place in Connecticut and in New Jersey.  Turner is a resident of New Jersey with his radio show's "place of business" in New Jersey, and the defendants are all officials and residents of Connecticut.  Nearly every choice-of-law factor is evenly divided between applying the law of Connecticut or New Jersey.  The final factor, however, weighs in favor of applying Connecticut law.  The vast majority of Turner's alleged harms took place in Connecticut, and indeed, the parties' relationship was "centered" in Connecticut.  Accordingly, I apply Connecticut law to Turner's tortious interference claim.

       c.   Sovereign Immunity With Respect to State Law Claims

Connecticut common law provides that "the state cannot be sued without its consent." *Miller v. Egan*, 265 Conn. 301, 313 (2003) (citing *Horton v. Meskill*, 172 Conn. 615, 623 (1977)).  Exceptions to Connecticut's common law doctrine of sovereign immunity are narrowly construed, *Chief Information Officer v. Computers Plus Center*, 310 Conn. 60, 79–80 (2013), and the meaning of any statute of derogation is "given the effect which makes the least . . . change in sovereign immunity."  *Daimler-Chrysler Corp. v. Law*, 284 Conn. 701, 711–12 (2007).  The "state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed."  *Martinez v. Conn. Dep't of Safety*, 263 Conn. 74, 82 (2003), *superseded by statute on other grounds*, Conn. Gen. Stat. § 53-39a, *as recognized in Vejseli v. Pasha*, 282 Conn. 531, 570 n.8 (2007).  A plaintiff may only bring a claim against the State by demonstrating that the state legislature statutorily waived the State's sovereign immunity, "either expressly or by force of a necessary implication."  *184 Windsor Avenue, LLC v. Connecticut*, 274 Conn. 302, 309 (2005).

---

8.   It should be noted, however, that Turner does not identify any business-related harm, nor do his pleadings set forth whether his radio show and website were businesses within the meaning of his tort claim.

A plaintiff bringing a claim for money damages against the State must first file his claim with the Connecticut Office of the Claims Commissioner.  Connecticut law provides, "In the absence of a statutory waiver of sovereign immunity, [a] plaintiff may not bring an action against the [S]tate for monetary damages without authorization from the claims commissioner to do so." *Columbia Air Servs., Inc. v. Conn. Dep't of Transp.*, 293 Conn. 342, 351 (2009) (citing Conn. Gen. Stat. § 4-160); *see also Kroszer v. City of New Haven*, 212 Conn. 415, 423 (1989), *cert. denied*, 493 U.S. 1036 (1990).  Only claims related to payment of disability, pension, retirement, or other employment benefits; claims upon which suit is otherwise expressly authorized by law; claims requiring an administrative hearing; requests by political subdivisions regarding payments in lieu of taxes; and claims for the refund of taxes are exempted from that regime.  Conn. Gen. Stat. § 4-142.  Thus, a plaintiff is expressly barred from bringing suit for "monetary damages . . . not sanctioned by the [claims] commissioner or other statutory provisions."  *Miller*, 265 Conn. at 317–18.

Connecticut law provides no private right of action against the State for money damages with respect to claims for malicious prosecution or tortious interference with business relations. Both claims are subject to Connecticut's three-year statute of limitations on torts claims, and both claims require that a plaintiff seek the Claims Commissioner's review prior to filing a lawsuit.  Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *Dauphinais v. Cunningham*, 395 F. App'x 745, 745 (2d Cir. 2010) (summary opinion) (holding Connecticut statute of limitations for claim for tortious interference with business relations is three years).[9]

---

9.   The statute of limitations for Turner's tort claims accrue at different periods.  The statute of limitations for his malicious prosecution claim runs from September 2011 and did not expire until September 2014.  *Lopes v. Farmer*, 286 Conn. 384, 387–88 (2008).  Turner filed suit well before that time period expired.  *See* Compl. 1 (filed Nov. 21, 2012).  Conversely, the statute of limitations for Turner's tortious interference claim began to run on the date that

The statute of limitations has run on Turner's tortious interference claim.  Although the statute had not expired on his malicious prosecution claim when he filed this action, Turner was required to seek the Claims Commissioner's review of his malicious prosecution claim prior to initiating this lawsuit.  As a result, Turner's malicious prosecution claim is now time-barred from review by the Claims Commissioner.  Accordingly, this court lacks subject matter jurisdiction over Turner's state claims for tortious interference and malicious prosecution, and all state law claims brought under those theories of liability must be dismissed with prejudice.

### B.  Absolute Immunity:  Individual-Capacity Claims

The defendants argue that all claims against Hardy, the State's Attorney for the Hartford Judicial District, as well as all claims against Assistant State's Attorneys Garcia and O'Connor, must be dismissed pursuant to the doctrine of absolute immunity.  Turner argues that the entire Connecticut legal system had been corrupted by powerful political actors who should not be able to invoke the protections of immunity.[10]  For the reasons set forth below, all claims against defendants Lawlor, Hardy, Garcia, Jones, MacDonald and O'Connor are barred by the doctrines of either prosecutorial or judicial immunity—both of which are forms of absolute immunity.

Because absolute immunity defeats a lawsuit from the outset; it is a complete bar to recovery.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Imbler v. Pachtman*, 424 U.S. 409, 419

---

Turner alleges the defendants interfered with his ability to broadcast his radio show, June 3, 2009—the date Turner was taken into custody.  Am. Compl. ¶¶ 14–15.  The statute of limitations for Turner's tortious interference claim expired on June 3, 2011, several months before Turner filed suit.  Thus, his tortious interference claim is time-barred.

10.  To the extent that Turner attempts to reargue the merits of arguments raised and decided in the state courts (i.e., extra-territorial application of Connecticut's jurisdiction to allegedly criminal acts outside its borders, lack of probable cause in obtaining a warrant, failure to indict by a grand jury, etc.), the doctrines of *res judicata* and collateral estoppel bar Turner's efforts to disturb those prior determinations.  *Allen v. McCurry*, 449 U.S. 90, 104–05 (1980) (holding that the doctrines of *res judicata* and collateral estoppel apply to Section 1983 suits that challenge a person's treatment during a prior state court criminal proceeding); *see generally Montana v. United States*, 440 U.S. 147, 153; *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 352 (1876) (*res judicata*); *Powell v. Infinity Ins. Co.*, 282 Conn. 594, 600–01 (2007) ("The doctrine of res judicata holds that an existing final judgment rendered on the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues litigated" between the parties); *Gladysz v. Planning & Zoning Com'n*, 256 Conn. 249, 260 (2001) (collateral estoppel).

n.13 (1976) ("The procedural difference between the absolute and the qualified immunities is

important.  An absolute immunity defeats a suit at the outset, so long as the official's actions

were within the scope of that immunity."); *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per

curiam); *see also Office of the Gov. v. Select Comm. of Inquiry*, 271 Conn. 540, 563–65 (2004).

Accordingly, all claims against defendants Hardy, Garcia, Jones, Lawlor, MacDonald and

O'Connor in their individual capacities must be dismissed.

   1. *Prosecutorial Immunity* (Counts Four, Five, Six, Seven and Eight)

  State prosecutors enjoy absolute immunity from Section 1983 suits for money damages

whenever they act within the scope of their prosecutorial duties.  *Imbler*, 424 U.S. at 420; *Hill v.

City of New York*, 45 F.3d 653, 660 (2d Cir. 1995).  To determine whether absolute immunity

applies, the Second Circuit utilizes a "functional approach" in which a court must determine

whether the function being performed is "intimately associated with the judicial phase of the

criminal process."  *Imbler*, 424 U.S. at 430; *Hill*, 45 F.3d at 660 (citing *Buckley v. Fitzsimmons*,

509 U.S. 259 (1993) (plurality opinion in part, majority opinion in part)); *Bernard v. Cnty. of

Suffolk, N.Y.*, 356 F.3d 495 (2d Cir. 2004).  Examples of "intimately associated" prosecutorial

acts include determining which offenses and which defendants to charge; initiating a

prosecution; presenting a case at trial; evaluating and organizing evidence for presentation at a

trial or grand jury; and "virtually all acts, regardless of motivation, associated with [the

prosecutor's] function as an advocate."  *Dory v. Ryan* (*Dory II*), 25 F.3d 81, 83 (2d Cir. 1994)

(alteration in original); *see also Buckley*, 509 U.S. at 273 (majority opinion) ("[a]cts undertaken

by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur

in the course of his role as an advocate for the State, are entitled to the protections of absolute

immunity.") (citing *Burns v. Reed*, 500 U.S. 478, 491 (1991)); *Ying Jing Gan v. City of New*

*York*, 996 F.2d 522 (2d Cir. 1993).  Absolute immunity does not extend, however, to instances in which a prosecutor performs administrative or investigatory functions unrelated to preparation for judicial proceedings.  *Buckley*, 509 U.S. at 269–70 (majority opinion); *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987), *cert. denied*, 489 U.S. 1065 (1989).

Turner alleges that the State's Attorney for the Hartford Judicial District and several assistant state's attorneys violated his federal constitutional rights by engaging in the following activities:  (1) Hardy unlawfully approved and filed an application for an arrest warrant against Turner without probable cause and without jurisdictional authority, Am. Compl. 8; (2) O'Connor unlawfully required that Turner post bail in both New Jersey and Connecticut in order to qualify for pretrial release, and that in advocating for bail in both states, O'Connor "reneged" on a bail agreement with the State of New Jersey, *id.* at 14; (3) that O'Connor "compelled" Turner to be tried in Connecticut, *id.* at 15–16; (4) Hardy and Garcia had charged Turner with several counts of Inciting Injury to Persons or Property, a felony, instead of a lesser crime *id.*; (5) Hardy and O'Connor initiated prosecution without seeking a grand jury indictment, *id.* at 15–16; (6) the defendants engaged in unspecified malfeasance and corruption; and (7) Garcia charged Turner with misdemeanor Threatening in the Second Degree, but did so after the statute of limitations, demonstrating malice, *id.* at 19.

The Supreme Court has held that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  *Buckley*, 509 U.S. at 274 (majority opinion).  Even after the probable cause and arrest stage in a prosecution, a prosecutor is not entitled to absolute immunity for any investigative functions undertaken post-arrest, such as the manufacture of evidence or the execution of a search warrant.  *See Barbera*, 836 F.3d at 100 (distinguishing between an investigative role and an advocate's role in

evaluating evidence).  Accepting Turner's factual allegations as true, the doctrine of absolute

immunity bars his claims against defendants Hardy, Garcia and O'Connor.

In *Hill*, a New York assistant district attorney ("ADA") manufactured evidence, brought

aggravated child sexual abuse charges, withheld exculpatory *Brady* evidence, submitted false

statements to the court affirming that no exculpatory evidence existed and actively sought the

removal of the plaintiff's minor children from her home.  45 F.3d at 661.  Throughout her

criminal prosecution, the plaintiff was unable to post bail.  *Id.* at 658.  As a result, the plaintiff

was incarcerated for nearly nine months, resulting in a significant deprivation of liberty and

severe economic hardship.  *Id.*  Several months later, the plaintiff discovered an exculpatory

recording of the ADA's interview with her injured child when the prosecuting ADA

inadvertently sent plaintiff's counsel the wrong recording.  *Id.*  Nearly a year after her arrest and

incarceration, the indictment against the plaintiff was dismissed.  *Id.*  Shortly thereafter, the

plaintiff brought an action pursuant to Section 1983 alleging multiple violations of her

constitutional rights and malicious prosecution.  *Id.*  The Second Circuit held that, consistent

with *Buckley*, the plaintiff's claims that the ADA engaged in a malicious prosecution, conspired

to present falsified evidence and withhold exculpatory evidence from a grand jury, and

suppressed *Brady* material were all barred by the doctrine of absolute prosecutorial immunity.

*Id.* at 661.

The facts underlying *Hill* are markedly more egregious than Turner's allegations.

Nevertheless, the Second Circuit interpreted the U.S. Supreme Court's opinions in *Buckley* and

*Imbler* to require dismissal of all constitutional tort claims related to Hill's prosecution, including

claims related to allegations of wrongdoing and prosecutorial misconduct.  Similarly, U.S.

Supreme Court and Second Circuit case law requires the dismissal of all of Turner's

constitutional tort claims related to his prosecution in Connecticut. *Buckley*, 509 U.S. at 274

(majority opinion); *Imbler*, 424 U.S. at 422–23; *Giraldo v. Kessler*, 694 F.3d 161, 165–67 (2d

Cir. 2012); *Hill*, 45 F.3d at 661. Accordingly, all of Turner's claims regarding his prosecution

(enumerated above as actions three through seven) are dismissed with prejudice against Hardy,

Garcia and O'Connor in their individual capacities.

       Absolute immunity also requires the dismissal of Turner's claims regarding his seeking

an arrest warrant and setting bail terms. The Supreme Court has held that under common law,

absolute immunity attaches to "a prosecutor's decision to bring an indictment, whether he has

probable cause or not." *Buckley*, 509 U.S. at 274 n.5 (majority opinion); *see also Imbler*, 424

U.S. at 431 n.33 (noting that prosecutors may engage in an advocacy role when determining

whether to bring charges or to seek a warrant). Although probable cause is a factor to consider

when analyzing whether absolute immunity attaches, both the U.S. Supreme Court and Second

Circuit have held that a prosecutor's initiation of criminal charges relates to a prosecutor's

advocacy role, and consequently, falls within the aegis of absolute prosecutorial immunity.

*Buckley*, 509 U.S. at 273 (majority opinion); *Burns v. Reed*, 500 U.S. 478, 490–93 (1991); *Hill v.*

*City of New York*, 45 F.3d at 661.

       Finally, Hardy and O'Connor are entitled to absolute immunity with respect to their

decision to charge Turner with a felony and to require bail to be posted in New Jersey and in

Connecticut. The Second Circuit has held that prosecutors are entitled to absolute immunity

when setting or raising bail conditions for a criminal defendant. Although "increasing the bond

amount is not among those 'actions that are connected with the prosecutor's role in judicial

proceedings,'" under certain circumstances prosecutors may enjoy absolute immunity under a

theory of prosecutorial or judicial immunity. *Root v. Liston*, 444 F.3d 127, 131–32 (2d Cir.

22

2006); *see also Giraldo*, 694 F.3d at 167; *Walczyk v. Rio*, 496 F.3d 139, 164–65 (2d Cir. 2007)

(gathering cases).  In *Root,* the Second Circuit noted that setting the amount of a bond for bail

fell within the judicial function of courts.  444 F.3d at 132.  Applying the "functional approach,"

the Second Circuit reasoned that a prosecutor setting bail against a criminal defendant was

entitled to absolute judicial immunity; a prosecutor's advocacy for the imposition of higher bail

against a criminal defendant fell within a prosecutor's role as advocate for the State and was

entitled to absolute prosecutorial immunity.  *Simon v. City of New York*, 727 F.3d 167, 173–74 &

173 n.6 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1934 (2014); *Giraldo*, 694 F.3d at 167; *Walczyk*,

496 F.3d at l64.

Turner has not alleged any circumstances indicating that Hardy, Garcia or O'Connor

acted outside of the scope of their role as advocates for the State, and in the absence of such

activity, Turner's claims are barred by the doctrine of absolute prosecutorial immunity.

Accordingly, Counts Four, Five, Six, Seven and Eight are dismissed, with prejudice, against

Hardy, Garcia and O'Connor in their individual capacities.

2. *Judicial Immunity* (Counts Four, Five, Six, Seven, Nine, Eleven, Twelve)

Turner seeks to impute liability against Lawlor and MacDonald for the actions of two

Connecticut Superior Court judges, the Honorable Julia Dewey and the Honorable Carl J.

Schuman.  Turner does not bring claims against Judges Dewey and Schuman; instead, he argues

that Judges Dewey and Schuman, acting within the scope of their duties as judges, issued rulings

against Turner's interests in order to curry favor with Lawlor and MacDonald and to ensure

Judges Dewey and Schuman's re-appointment as state judges.  Turner alleges that Judges Dewey

and Schuman's purportedly unconstitutional rulings are evidence that Lawlor and MacDonald

conspired to deprive Turner of due process under law.  He pleads no other circumstances

indicating that an agreement or conspiracy existed between Lawlor, MacDonald and the Connecticut state judges who presided over Turner's criminal prosecution.

Judicial officers enjoy absolute immunity for "acts committed within their judicial jurisdiction," *Bradley v. Fisher*, 13 Wall. 335 (1872); i.e., they are immune from suit for complaints related to any actions undertaken in the performance of their duties as judges.  That absolute immunity extends to all civil suits, including suits brought under Section 1983 and section 1985.  *Mireles v. Waco*, 502 U.S. 9, 11–13 (1991); *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *Lombard v. Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 630 (2000).  Judicial immunity applies even if a party alleges that a judge acted in her judicial jurisdiction maliciously or corruptly.  *Pierson*, 386 U.S. at 553–54 (noting absolute immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.").

Turner effectively asks the Court to hold MacDonald and Lawlor responsible for decisions made by Judges Dewey and Schuman in the course of their performance of their duties as judges.  Both the U.S. Supreme Court and the Second Circuit have routinely held that plaintiffs cannot bring suit against judicial officers, or against individuals acting in a judicial capacity, even if a judicial officer's decisions were motivated by maliciousness.  *Id.*; *cf. Walczyk*, 496 F.3d at l64.  Similarly, a plaintiff cannot attempt to circumvent judicial immunity by imputing liability for judicial conduct to legislators acting within the scope of their duties as elected officials.  U.S. Const. art. I, § 6, cl. 1 ("for any Speech or Debate in either House [of Congress], [legislators] shall not be questioned in any other Place."); *Va. Sup. Ct. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980) ("[S]tate legislators enjoy common-law immunity

24

from liability for their legislative acts."); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503

(1975); *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 82–83 (2d Cir. 2007);

*Almonte v. City of Long Beach, N.Y.*, 478 F.3d 100, 106 (2d Cir. 2007); *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) ("Legislators are entitled to absolute

immunity from civil liability for their legislative activities."); Conn. Const. art. III, § 15 ("The

senators and representatives shall, in all cases of civil process," not be questioned in any other

place "for any speech or debate in either house"); *Office of Governor v. Select Comm. of Inquiry*,

271 Conn. 540, 563 (2004).

Even if Turner's claims against Lawlor and MacDonald were not barred by absolute

immunity, he has still failed to allege circumstances sufficient to state a Section 1983 claim

against either defendant.  To raise a claim for relief under Section 1983, a plaintiff must plead

circumstances indicating that each officer, in his individual capacity, had "personal involvement

in the 'alleged constitutional deprivations.'"  *Canzoneri v. Vill. of Rockville Centre, N.Y.*, 986 F.

Supp. 2d 194, 205 (E.D.N.Y. 2013) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.

1977)).  Turner does not allege that Lawlor and MacDonald were personally involved in the

alleged constitutional deprivations.  Instead, he alleges that a conspiracy existed between Lawlor,

MacDonald, and Judges Dewey and Schuman to deprive Turner of his federal constitutional

rights.  Turner attempts to hold Lawlor and MacDonald responsible for adverse legal decisions

made in the regular course of Turner's criminal prosecution.  Turner does not allege or plead that

Lawlor or MacDonald ever engaged in wrongful activity designed to influence the decisions of

Judges Dewey and Schuman.  Instead, he speculates that the bogeyman of corruption hung over

his prosecution and that, despite his acquittal, there was no way he could have received a fair

trial in Connecticut.  Under the allegations set forth in Turner's Amended Complaint, that

argument cannot survive a motion to dismiss.

Turner has failed to plead any information that plausibly suggests that a conspiracy existed between Judges Dewey and Schuman and defendants Lawlor and MacDonald. The mere fact that a legislator is a member of a committee that oversees the appointment of state judges is insufficient to set forth a claim of conspiracy.[11] Turner's rationale is too attenuated to sustain a claim that Lawlor and MacDonald committed any constitutional torts against him. Moreover, Turner cannot attempt to hold Lawlor and MacDonald liable for judicial conduct protected by judicial immunity.

Because Judge Schuman and Judge Dewey's decisions are protected by the doctrine of absolute judicial immunity, and because Turner has failed to plead facts that would plausibly support his claims, Counts Four, Five, Six, Seven, Nine, Eleven and Twelve are dismissed with prejudice against defendants Lawlor and MacDonald in their individual capacities.

C.  Statutes of Limitations and Failure to State a Claim

The defendants argue that, with the exception of Turner's malicious prosecution claim, all federal claims against Bednarz, Boyle, Jones, Lawlor and MacDonald are time-barred and must be dismissed. Because all counts against defendants Garcia, Hardy, Lawlor, MacDonald and O'Connor have been dismissed, I discuss Turner's claims against the remaining defendants, Bednarz, Boyle and Jones.

1.  *Federal Claims*

The defendants argue that, with the exception of Turner's malicious prosecution claim, all claims brought pursuant to Section 1983 are time-barred. The defendants are correct, and

---

11. By Turner's logic, it is impossible for any criminal defendant to receive a fair trial in the states of Delaware, Hawaii, Maine, New Hampshire, New Jersey, Rhode Island, South Carolina, Vermont and Virginia by virtue of their method of selecting their judges. *See* "Judicial Selection in the States," National Center for State Courts (2015).

accordingly, Counts One, Two, Three and Five must be dismissed because the statute of limitations for those claims expired prior to the commencement of this lawsuit.

In Connecticut, Section 1983 claims are subject to a three-year statute of limitations. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); Conn. Gen. Stat. § 52–577.  A Section 1983 claim accrues when "the plaintiff 'knows or has reason to know' of the harm" of which he complains.  *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994); *see also M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003); *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993) ("Federal law governs the question of when a federal claim accrues."); *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.").  Moreover, the existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs.  It is the wrongful act, not the conspiracy, which is actionable."  *Singleton*, 632 F.2d at 192.

      a.   Violation of, and Interference with, First Amendment Rights (Counts One, Two, Seven, Eight and Nine)

Under federal law, a claim for interference with First Amendment rights, violation of those rights, or First Amendment retaliation, accrues at the time that the allegedly wrongful conduct took place.  *Smith v. Campbell*, 782 F.3d 93, 101 (2d Cir. 2015); *see also Wallace v. Kato*, 549 U.S. 384, 394 (2007).

Turner alleges that Bednarz was the first to "discover" Turner's commentary, and he alleges that Bednarz participated in reporting that commentary to defendant Boyle and the Connecticut State Capitol police.  Am. Compl. ¶ 39.  Turner alleges that on that same day, Boyle had a conversation with Turner and subsequently applied for a warrant for Turner's arrest.  *Id.* ¶

27

5.

Turner alleges that Bednarz and Boyle engaged in constitutionally wrongful conduct on June 2, 2009, and he alleges that their efforts to interfere with Turner's First Amendment rights took place on June 3, 2009, when Turner was detained.  The latest date on which Turner's First Amendment claims could accrue, then, was June 3, 2009.  The statute of limitations for Turner to raise his claims expired on June 3, 2012—five months before Turner initiated this action.[12] Turner's First Amendment claims are thus time-barred and are dismissed with prejudice against all defendants.

        b.   False Arrest or Imprisonment (Counts Two, Three, Four, Five, Eight, Nine)

A Section 1983 claim for false arrest or for false imprisonment in violation of the Fourth Amendment, "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 387–88.  A claimant is "held pursuant to" process when "he is bound over by a magistrate or arraigned on charges." *Id.* at 389.

Turner alleges that he voluntarily surrendered to the North Bergen Police Department on June 3, 2009.  Am. Compl. ¶ 14.  New Jersey Superior Court Judge Richard Nieto arraigned Turner on the charges set forth in the Connecticut arrest warrant on June 4, 2009.  *Id.* ¶ 16. Under the facts alleged in Turner's Amended Complaint, his claims for false arrest and for false imprisonment accrued on June 4, 2009, the first date on which he was "held pursuant to process."  The statute of limitations for those claims expired on June 4, 2012.  Turner initiated this lawsuit when he filed his complaint with the U.S. District Court for the District of New

---

12.  Because Turner's First Amendment claims are time-barred, I need not address the merits of Turner's claim that his threat to publish the home addresses of three state officials, and his encouragement that readers murder those officials, was protected speech.  In similar proceedings involving threats made against three federal judges, the Second Circuit declined to hold that Turner's speech fell within the First Amendment's protections.  *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013).

Jersey on November 21, 2012—five months after the statute of limitations for those claims expired.

Consequently, Turner's Fourth Amendment claims against defendants Bednarz, Boyle and Jones (Counts Two, Three, Four, Five, Eight, Nine and Ten) are time-barred and are dismissed with prejudice.

      c.   Malicious Prosecution (Counts One through Five)

To prevail on a Section 1983 claim of malicious prosecution, the plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citing *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115 (1998)); *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009); *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992). In Connecticut, the elements of a malicious prosecution claim are that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982). To state a malicious prosecution claim under Section 1983, a plaintiff must also plead that he suffered a post-arraignment liberty restraint sufficient to implicate his Fourth Amendment rights. *Murphy*, 118 F.3d at 944–46. A Section 1983 claim for malicious prosecution accrues when "criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). Turner was acquitted around September 16, 2011, Am. Compl. ¶ 2, and thus, he timely has brought his Section 1983 malicious prosecution claims.

Whether Turner has adequately pleaded a Section 1983 malicious prosecution claim hinges on whether Bednarz, Boyle and Jones "acted without probable cause" and "acted with malice, primarily for a purpose other than that of bringing an offender to justice."  A party may demonstrate malice by showing that a prosecution was undertaken "from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff," including initiating proceedings without probable cause.  *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal citations omitted).  In this case, Turner alleges that Bednarz and Boyle set into motion his criminal prosecution in Connecticut when Bednarz complained to the State Police about Turner's commentary and when Boyle signed, under oath, an affidavit used to support Hardy's application for an arrest warrant.

i.    <u>Bednarz</u>

Under Connecticut state law, a private individual may be held liable for initiating a criminal proceeding "if he has insisted that the plaintiff should be prosecuted"; for example, by bringing "pressure of any kind to bear upon the public officer's decision to commence the prosecution."  *McHale*, 187 Conn. at 448 (citing *Fatone v. DeDomenico*, 161 Conn. 566, 577 (1971), and *Zenik v. O'Brien*, 137 Conn. 596, 595 (1951)).  Alternatively, a private individual may be held liable for initiating a criminal proceeding if he "knowingly provides false information to a public officer . . ., even if that person brought no pressure to bear on the public officer and left the decision to prosecute entirely in the hands of that public officer."  *Bhatia v. Debek*, 287 Conn. 397, 407–08 (2008).  If a defendant "has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution."  *McHale*, 187 Conn. at 448.  Further, because courts presume that prosecutors exercise their discretion to bring charges on legitimate bases, a plaintiff must

overcome that presumption and identify "a chain of causation" linking "the nonprosecuting government agent's motive and the prosecutor's action" to prevail. *Hartman v. Moore*, 547 U.S. 250, 262–63 (2006) (internal citations omitted).

Accepting the allegations in Turner's Amended Complaint as true, Turner has failed to plead circumstances indicating that Bednarz complained to the Capitol Police or that Bednarz provided false information to a public official. Instead, Turner alleges that as a legislative staffmember to Lawlor, Bednarz was the first person to discover Turner's commentary. Am. Compl. ¶ 39. After reviewing Turner's commentary, Bednarz notified Lawlor of its contents. *Id.* Lawlor then notified MacDonald, and Lawlor and MacDonald together submitted a copy of Turner's commentary to the Capitol Police. *Id.* After reviewing that commentary, defendant Boyle shared the commentary with former police Chief Michael Fallon. *Id.* Fallon and Boyle then met with Lawlor and Bednarz, separately contacted MacDonald and Jones, and ultimately decided to forward the complaint to Hardy. Am. Compl., Ex. 3.

Instead of offering any factual allegations indicating that Bednarz made a false complaint or otherwise attempted to ensure that Hardy initiated criminal proceedings against Turner, Turner relies on conjecture, hyperbole and ad hominem attacks to encourage the court to speculate that Bednarz acted with malice. Am. Compl. ¶ 39. Indeed, there is no indication in Turner's complaint that Bednarz acted without probable cause or otherwise testified untruthfully. Turner has failed to allege facts sufficient to support a plausible claim that Bednarz initiated criminal proceedings against Turner. Accordingly, Turner's Section 1983 malicious prosecution claim against Bednarz is dismissed.

    ii.  <u>Boyle</u>

Turner's claim against Boyle turns on the issue whether the plaintiff has a "right to be

free from an arrest based on a warrant that would not have been issued if the officer seeking the warrant had disclosed to the issuing [judge] information within the officer's knowledge that negated probable cause." *Loria v. Gorman*, 306 F.3d 1271, 1289 (2d Cir. 2002).  Turner also alleges that Boyle provided an affidavit, under penalty of perjury, for the purpose of interfering with Turner's ability to broadcast the home addresses of Jones, Lawlor and MacDonald, "a purpose other than that of bringing an offender to justice."  Am. Compl. ¶¶ 7–8.

The fact that a criminal proceeding has terminated in favor of the plaintiff may establish lack of merit, but the plaintiff must demonstrate separately that there was a lack of probable cause to initiate that criminal proceeding.  *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 103–04 (2007); *see also Thompson v. Beacon Valley Rubber Co.*, 56 Conn. 493 (1888).  The existence of probable cause is a complete defense to a claim of malicious prosecution.  *Mulligan v. Rioux*, 229 Conn. 716, 747–48 (1994) (citing *Brodrib v. Doberstein*, 107 Conn. 294, 296 (1928)).   In cases where the party charged with malicious prosecution (Boyle) differs from the party who made the decision to prosecute (Hardy, O'Connor), the plaintiff must plead and prove an absence of probable cause in order to link the defendant (Boyle) and the party initiating prosecution (Hardy, O'Connor).  *Hartman*, 547 U.S. at 263.

In criminal cases, "probable cause is broadly defined" and must be based upon "facts as would reasonably persuade an impartial and reasonable mind . . . to believe that criminal activity has occurred."  *State v. Johnson*, 286 Conn. 427, 435–36 (2008).  Because an arrest warrant may issue only upon a finding of probable cause, federal courts have held that it is "objectively reasonable for [police] officers to believe there was probable cause" upon "the issuance of a warrant by a neutral magistrate."  *Golino v. City of New Haven, Conn.*, 950 F.2d 564, 870 (2d Cir. 1991) (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).  As a result, a plaintiff

32

"who argues that a warrant was issued on less than probable cause faces a heavy burden" and must make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Id.*; *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *see also Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir. 1990) (applying the *Franks* standard to civil rights actions).

Turner has not alleged facts to establish that Boyle acted without probable cause or that there is a causal link between his affidavit, Judge Dewey's issuance of an arrest warrant, and O'Connor's decision to initiate criminal charges against Turner.  Although Turner alleges that the parties conspired to interfere with his First Amendment rights—an allegation that is now time-barred—he does not contest the truth of the statements set forth in Boyle's affidavit. Instead, Turner alleges that the parties sought his arrest in order to prevent a crime of violence. Turner alleges that the Capitol Police should have adopted a "wait and see" approach.  Whether Boyle essentially "complained too early" of a potential safety threat does not render his affidavit untruthful or insufficient to support probable cause.  Indeed, Boyle testified fully and identified in his affidavit accompanying the application for an arrest warrant that Turner had not yet disclosed Jones, Lawlor and MacDonald's home addresses.  Am. Compl., Ex. 3.

Turner has failed to allege facts demonstrating that Boyle acted without probable cause, dishonestly or with reckless disregard for Turner's constitutional rights when providing his affidavit accompanying Hardy's application for an arrest warrant.  Turner has also failed to demonstrate any causal link between Boyle's affidavit and O'Connor's decision to initiate criminal prosecution.  Accordingly, all Section 1983 malicious prosecution claims against Boyle are dismissed for failure to state a claim upon which relief can be granted.

iii. <u>Jones</u>

Turner alleges that Jones offered testimony at Turner's criminal trial indicating that the defendants had entered into a conspiracy to deprive Turner of his constitutional rights, particularly his First Amendment rights.  Turner fails to assert any factual allegations to support that allegation.

Turner relies heavily on an excerpt of Jones's testimony at Turner's criminal trial to demonstrate that a conspiracy existed among the defendants, including Jones, to deprive Turner of his constitutional rights.  The excerpted testimony indicates that Jones learned of Turner's alleged threat *after* a complaint had been made to the Capitol Police.[13]  Am. Compl., Ex. 7 (Tr. 112:9–112:24).  Turner alleges no other circumstances in which Jones was personally involved in any of the activities preceding Turner's arrest or resulting in his prosecution.  As noted in section III.B.2, in order to bring a Section 1983 claim against a defendant in his individual capacity, the plaintiff must allege that that defendant was personally involved in an alleged constitutional deprivation.  *McKinnon*, 568 F.2d at 934.  Turner makes no such allegation in his Amended Complaint, nor does he allege the existence of any circumstances that would plausibly give rise to a claim for relief against Jones.

Accordingly, all claims against Jones in his individual capacity are dismissed for failure to state a claim upon which relief may be granted.

---

13.  The relevant portion of Jones's testimony reads:

> You know, I was walking back from the attorney general's office when I first heard [of the threatening commentary].  I got a call from the Capitol Police saying that there's a post up there and they read me parts of the post.  And I just – I mean, at that time my wife's parents were staying with us. . . . I got the West Hartford Police to patrol my house; they were in constant contact with me. . . . The threat that was posted was I'm gonna post this guy's address in twenty-four hours, and Capitol Police was trying to execute a warrant on him so that he couldn't do that within twenty-four hours.  And that twenty-four hours, having no control of the process, the end game to me is potentially I have people coming over to my house with guns.

d.   Fifth and Fourteenth Amendment (Counts Three, Seven, Eight, Nine, Ten)

i.   Fourteenth Amendment Claims

Turner also alleges that the defendants violated his Fourteenth Amendment rights to due process and to equal protection by prosecuting him in Connecticut when Turner resided in New Jersey.  Although Turner styles his claim as an allegation that he was denied equal protection, he does not allege that he was treated differently than other similarly-situated criminal defendants.  Instead, Turner alleges that simply being subjected to process in Connecticut violated his Fourteenth Amendment due process rights.

As a preliminary matter, Turner's claim is time-barred.  As noted, above, Turner's claim accrued on the date he was first subjected to process in Connecticut—June 8, 2009.  *Jewell v. Cnty. of Nassau*, 917 F.2d 738, 739–40 (2d Cir. 1990).  Further, it is logically inconsistent to argue that by requiring Turner's participation in several hearings—a form of process—that somehow he was deprived of due process of law.  Because Turner's Fourteenth Amendment equal protection and due process claims are time-barred, those claims are dismissed with prejudice against all defendants.  In the alternative, his Fifth and Fourteenth Amendment equal protection and due process claims are dismissed for failure to state a claim upon which relief can be granted.

ii.   Fifth Amendment Claims

In addition to his due process claim, Turner alleges that the defendants violated his Fifth Amendment right to indictment by grand jury.  Am. Compl. ¶ 33.  Turner's argument must be dismissed for three reasons.  Under the doctrine of absolute prosecutorial immunity and judicial immunity, Turner cannot hold the defendants liable for the actions of any of the prosecutor-defendants or for Judge Schuman's decisions during Turner's criminal prosecution.  Next,

35

Turner's argument is barred by the doctrine of collateral estoppel, which provides that an individual may not relitigate an issue that has already been decided in a prior proceeding where he had a full and fair opportunity to litigate that issue.  Finally, Turner's claim is time-barred.

As noted *supra* in section III.B., the decisions of a prosecutor or judicial officer, acting within the scope of his official duties, is immune from suit.  Turner principally takes issue with Judge Schuman's prior decisions and rulings.  Because he cannot sue Judge Schuman, he instead attempts to impute Judge Schuman's decisions to the defendants.  That effort is not supported by the facts alleged in Turner's Amended Complaint, and his allegations additionally fail to set forth a cognizable claim against the defendants.

Even if the defendants could be held liable for Judge Schuman's decisions, Turner is barred by collateral estoppel from relitigating the issue whether he was entitled to a grand jury indictment.  The doctrine of collateral estoppel prohibits relitigation of an issue when the issue "was actually litigated ad necessarily determined in a prior action between the same parties upon a different claim."  *Wilcox v. Webster Ins., Inc.*, 294 Conn. 206, 222 (2009); *Birnie v. Elec. Boat Corp.*, 288 Conn. 392, 405 (2008).  Turner alleges that Judge Schuman ruled on the issue of whether the Connecticut State's Attorneys were required to seek a grand jury indictment prior to arresting and prosecuting Turner.  Am. Compl. ¶ 33.  Turner does not allege that he did not have the opportunity to present his argument; instead, he refuses to accept Judge Schuman's determination that the Fifth Amendment requirement of indictment by grand jury has not been incorporated against the States.[14]

Finally, Turner's Fifth Amendment claims are time-barred.  Turner alleges that in failing

---

14.  The Fifth Amendment right to indictment by a grand jury was not incorporated against the states by the Fourteenth Amendment and does not apply to the states.  *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (citing *Branzburg v. Hayes*, 408 U.S. 665, 668 n.25 (1972), and *Hurtado v. California*, 110 U.S. 516 (1884)); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990).

to seek a grand jury indictment prior to instituting charges against him, the defendants violated

his Fifth Amendment right to an indictment or presentment by grand jury.  The State's Attorney

filed an information in Connecticut Superior Court on or about June 2, 2009, and at latest, on

June 3, 2009.  Turner's claim would have accrued on the date that criminal charges were initiated

against him in Connecticut—either June 2 or June 3, 2009.  Even assuming that his claim

accrued at the later date, Turner's statute of limitations expired several months before he filed his

claim.  Accordingly, his Fifth Amendment claims are dismissed with prejudice against all

defendants.

> e.  Sixth Amendment Right to be Tried by a Jury "of the State and District Wherein
> the Crime Shall Have Been Committed"

The U.S. Constitution requires that a person be tried for a crime "in the State where the

said Crimes shall have been committed," art. III, § 2, cl. 3, and that in criminal prosecutions, "the

accused shall enjoy the right to a . . . trial, by an impartial jury of the State and district wherein

the crime shall have been committed."  *Id.* amend. VI.; *Duncan v. Louisiana*, 391 U.S. 145, 148–

50 (1968) (incorporating the Sixth Amendment's jury trial guarantee against the States); *State v.

Rizzo*, 303 Conn. 71, 76–77 (2011).  The "location" of a crime is determined by the nature of the

alleged crime and the location of the act or acts constituting it.  *United States v. Anderson*, 328

U.S. 699, 703 (1946); *see also United States v. Novak*, 443 F.3d 150, 160–61 (2d Cir.), *cert.

denied*, 549 U.S. 997 (2006).  The statute of limitations for a Section 1983 claim alleging a Sixth

Amendment fair trial violation accrues when the alleged conduct has caused the claimant harm

and the claimant knows or has reason to know of the conduct and harm.  *Veal v. Geraci*, 23 F.3d

722, 724 (2d Cir. 1994).

Turner alleges that he was harmed when he was required to travel to Connecticut to

participate in his defense.[15]  Am. Compl. ¶¶ 21–23.  Turner claims that he was "compelled to travel to Connecticut" to answer "for words uttered in New Jersey" as early as June 8, 2009. Am. Compl. ¶ 23.  Accordingly, the statute of limitations for Turner's Sixth Amendment claim expired on June 8, 2012, and is time-barred.  As a result, all Sixth Amendment claims related to the venue of Turner's prosecution are dismissed with prejudice against all defendants.

  f. Eighth Amendment "Excessive Bail" Claim

  Turner alleges that the defendants subjected him to "excessive bail" by requiring Turner to post bail both in Connecticut and New Jersey.  The Eighth Amendment provides that "[e]xcessive bail shall not be required," U.S. Const. amend. VIII; *see also United States v. Salerno*, 481 U.S. 739 (1987) (setting forth standard for determining if bail is excessive); *Stack v. Boyle*, 342 U.S. 1 (1951) (bail cannot be set higher than an amount reasonably likely to ensure the defendant's presence at trial).  The statute of limitations for a Section 1983 claim brought under the Eighth Amendment is also three years.  *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *see Shomo v. City of New York*, 579 F.3d 176, 180–81 (2d Cir. 2009).

  Turner alleges that Connecticut officials made their allegedly excessive bail demands on June 8, 2009, and again "within days" of Turner's appearance in New Jersey.  Am. Compl. ¶¶ 18, 20–24.  Even assuming that Turner's Connecticut appearance took place as late as June 30, 2009, Turner's claims would be time-barred.  Further, because Connecticut and New Jersey presumably returned Turner's bail when he was acquitted, Turner has failed to demonstrate how he was injured by the allegedly excessive bail or how that bail interfered with Turner's ability to participate in his own defense.  Thus, Turner's Eighth Amendment claim is dismissed with

---

15.  It should be noted that Turner's counsel filed a motion to dismiss for improper venue and lack of jurisdiction, and that Judge Schuman rejected that motion on the merits.  Thus, even if Turner's Sixth Amendment claim was timely, he would be estopped from relitigating the issue by the doctrine of collateral estoppel.

prejudice against all defendants.

      2.   *State Law Claims* (Count Eleven)

           a.   Tortious Interference with Business Relations (Count Eleven)

Under Connecticut common law, a claim of tortious interference with business expectancies is subject to a three-year statute of limitations.  Conn. Gen. Stats. § 52–577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *Byrne v. Burke*, 112 Conn. App. 262, 271–72, *cert. denied*, 290 Conn. 923 (2009).  "Section 52-577 is a statute of repose," and its limitation cannot be tolled. *Zapata v. Burns*, 207 Conn. 496, 508 (1988).

Turner principally alleges that the defendants interfered with his ability to broadcast his show between June 3 and June 8, 2009.  Taking the facts asserted in Turner's Amended Complaint as true, the allegedly tortious conduct took place no later than June 8, 2009, and his claim expired on June 8, 2012.  Consequently, Turner's state law claim for tortious interference with business expectancies is dismissed with prejudice with respect to all defendants.

           b.   Malicious Prosecution (Counts One through Five)

A state law claim for malicious prosecution is also governed by the three-year limitation period set forth in section 52-577 of the Connecticut General Statutes.  A claim for malicious prosecution, however, accrues only after the underlying action terminates in the plaintiff's favor. *Lopes v. Farmer*, 286 Conn. 384, 389–90 (2008).  Turner was acquitted around September 16, 2011, Am. Compl. ¶ 2, and thus, he has timely set forth a state law claim for malicious prosecution.  In order to prevail on a claim for malicious prosecution, a plaintiff must prove that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant

acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose

other than that of bringing an offender to justice."  *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447

(1982).

The analysis for a state law claim of malicious prosecution is nearly identical to a Section

1983 claim for malicious prosecution.  *Manganiello*, 612 F.3d at 160–61 (to prevail on a Section

1983 malicious prosecution claim, the plaintiff must "show a violation of his rights under the

Fourth Amendment, and must establish the elements of a malicious prosecution claim under state

law.").  As previously discussed, Turner's Amended Complaint fails to allege that Bednarz,

Boyle or Jones "acted without probable cause" or "with malice, primarily for a purpose other

than that of bringing an offender to justice," and consequently fails to state a claim upon which

relief can be granted.  Accordingly, Turner's state law malicious prosecution claims against

Bednarz, Boyle and Jones are dismissed for substantially the same reasons as those set forth

*supra* in section III.C.1.c.

   D.  Qualified Immunity (Counts One through Five)

Even if the analysis set forth in section III.C is erroneous, all claims against Bednarz and

Boyle are barred by the doctrine of qualified immunity.[16]

The doctrine of qualified immunity "protects government officials from suits seeking to

impose personal liability for money damages based on unsettled rights or on conduct that was

not objectively reasonable."  *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir. 1999)

(internal citations omitted); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (citing *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)).  Government officials "enjoy qualified immunity when

---

16.  All claims against the other defendants have been dismissed on sovereign and absolute immunity grounds.
Additionally, all claims against Jones were dismissed for failure to state a claim upon which relief could be granted.
Accordingly, I limit my analysis to the only defendants against whom live claims may remain—Bednarz and Boyle.

they perform discretionary functions if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (alteration in original) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990)).

Because qualified immunity bars liability for an individual-capacity suit, the determination of whether such immunity exists is case-specific. The U.S. Supreme Court encourages, but does not mandate, that federal courts use a two-step process to determine if an officer is shielded by qualified immunity. The first step of that inquiry is to determine whether the plaintiff has alleged a deprivation of a constitutional right, and the second step requires that the court determine whether that right is clearly established. *Pearson*, 555 U.S. at 372 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

To state a Section 1983 malicious prosecution claim, a plaintiff must plead that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice; and (5) there was a post-arraignment liberty restraint sufficient to implicate the plaintiff's Fourth Amendment rights. *McHale*, 187 Conn. at 447; *Murphy*, 118 F.3d at 944–46. A party may demonstrate the fifth element by pleading that he was subject to limitations on his liberty such as pretrial detention, having restrictions placed on his travel, or being forced to attend multiple court proceedings under penalty of detention. *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215–16 (2d Cir. 2000); *Murphy*, 118 F.3d at 944–46 (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Taking his allegations as true, Turner has stated a

41

claim for Section 1983 malicious prosecution.

After determining that a federal right is implicated, an official may still be entitled to qualified immunity if (1) the attributed conduct is not prohibited by federal law, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1988); or (2) the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the conduct, *Harlow*, 457 U.S. 800, 817–19 (1982); or (3) the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time action was taken, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  At the initial stages of litigation, each of the questions enumerated above is a question of law that may be resolved by a motion to dismiss.  *Rohman*, 215 F.3d at 216.

      1.  *Complaining Witness Immunity* (Counts Four, Five, Six, Seven, Nine, Eleven and Twelve)

At common law, a complaining witness was entitled to qualified immunity unless the complainant was motivated by malice, and the plaintiff's later arrest lacked probable cause. *Malley*, 475 U.S. 335, 341–42 (1986); *see also Kalina v. Fletcher*, 522 U.S. 118 (1997).  A complainant who acts maliciously may still enjoy qualified immunity if he acted in an objectively reasonable manner, regardless of his underlying motives.  *Harlow*, 457 U.S. at 817–18.  Based on the allegations set forth in Turner's Amended Complaint, Bednarz is entitled to qualified immunity as a matter of law.

Turner's allegations against Bednarz fail on several grounds.  First, Turner simply recites that the defendants lacked probable cause and acted with malice, but he does not allege facts or circumstances that support those assertions.  Second, Turner has not alleged that Bednarz complained to Capitol Police regarding Turner's commentary; instead, Turner alleges that Bednarz notified his supervisor at the time, Lawlor, of the commentary and its threats.  Finally,

even assuming for the sake of argument that Bednarz did complain to the Capitol police, such a complaint would have been objectively reasonable, and no reasonable jury could plausibly find otherwise.

Given the vituperative and specific nature of Turner's commentary, it is objectively reasonable for any person, including Bednarz, to have reported Turner's threat to the police.  A layperson need not know the legal parameters of the First Amendment to believe that commentary that invokes the Second Amendment, sets forth its purpose as "to foment direct action against these individuals personally," threatens that government officials should "obey the Constitution or die," and then suggests that it is appropriate to murder state prosecutors, police, and judges may violate criminal law.  Even if Bednarz believed Turner's commentary to be hyperbole, it was reasonable to discuss Turner's commentary with investigating police officers.  Taking the facts in Turner's Amended Complaint as true, no reasonable jury could find it plausible that Bednarz acted unreasonably under the circumstances.  Accordingly, Bednarz is entitled to qualified immunity, and Turner's Section 1983 malicious prosecution claim against him is dismissed with prejudice.

   2.   *Police* (Counts One, Two, Three, Four, Five, Six, Seven, Eleven and Twelve)

Executive officials serving a non-adjudicative or prosecutorial function are typically protected only by qualified, not absolute, immunity.  *Harlow*, 457 U.S. at 807.  When police officers offer an affidavit in support of an application for an arrest warrant, they act in a capacity similar to complaining witnesses.  *Malley*, 475 U.S. at 341–42.  If an arrest warrant appears on its face to support probable cause, then an officer is entitled to qualified immunity as a matter of law for claims based on that affidavit.  *Id.* at 344–45 (citing *United States v. Leon*, 468 U.S. 897 (1984)).

43

The standard for determining whether a warrant lacks probable cause places a high burden on the plaintiff.  "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."  *Malley*, 475 U.S. at 344–45 (internal citation omitted).  An application is considered to be objectively reasonable if "officers of reasonable competence could disagree" on the legality of the defendant's actions.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley*, 475 U.S. at 341).

Hardy's application for an arrest warrant, which included Boyle's affidavit, provided adequate probable cause for a neutral magistrate to issue an arrest warrant.  Turner does not allege that Boyle's affidavit is materially defective or false, but rather, alleges that Boyle had an improper motive when providing his affidavit. Regardless of Boyle's motive, *Harlow*, 457 U.S. at 817–18, the affidavit provides sufficient probable cause for a reasonable and neutral magistrate to grant an application for an arrest warrant.  Accordingly, Boyle is entitled to qualified immunity, and Turner's Section 1983 malicious prosecution claim against Boyle is dismissed with prejudice.

Boyle also is entitled to state-law immunity with respect to Turner's state-law malicious prosecution claim.  *Gallo v. Barile*, 284 Conn. 459, 469–70 (2007).  Under Connecticut law, police officers and certain complaining witnesses are entitled to qualified immunity when making a complaint or offering information that initiates legal proceedings against the plaintiff. *Id.*; *see also Petyan v. Ellis*, 200 Conn. 243, 252 (1986), *superseded by statute on other grounds as recognized in Chadha v. Charlotte Hungerford Hosp.*, 272 Conn. 776, 786–87 (2005). Connecticut's framework for determining whether a police-officer defendant is entitled to qualified immunity for a state-law malicious prosecution claim is substantively identical to the

federal framework for determining whether qualified immunity bars a Section 1983 malicious prosecution claim. *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526–30 (1985)). Turner alleges identical facts and elements for both his federal and state malicious prosecution claims, and he makes no distinction between those two theories of liability. Thus, the analysis set forth above regarding Turner's Section 1983 malicious prosecution claim also applies to Turner's state-law malicious prosecution claim against Boyle. Consequently, Boyle is entitled to qualified immunity with respect to Turner's state-law malicious prosecution claim, and Turner's state law malicious prosecution claim is dismissed with prejudice.

E. Standing to Bring Criminal Charges (Count Twelve)

A private individual may only bring suit under a federal statute when that statute creates a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308, 311–12 (2d Cir. 2000). There is no private right of action that allows a plaintiff to bring a claim for violation of 18 U.S.C. § 242. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) (crimes may only be prosecuted by the government, not by private parties); *see also Hill v. Didio*, 191 F. App'x 13, 14–15 (2d Cir. 2006) (summary order). Accordingly, Turner's claims regarding a violation of the federal criminal civil rights statute, 18 U.S.C. § 242, are dismissed with prejudice against all defendants.

F. Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985 (Count One)

Turner also alleges that the defendants conspired to deprive him of his civil rights— specifically his First Amendment free speech and free press rights—by orchestrating his arrest and prosecution. Turner invokes the Enforcement Act of 1871, also known as the Ku Klux Klan Act, 42 U.S.C. § 1985, to raise his conspiracy claim.

45

Section 1985(3) provides,

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State . . . from giving or securing to all persons within such State . . . the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To assert a section 1985(3) claim, a plaintiff must allege (1) that the defendants had racial, or other class-based, invidiously discriminatory animus; (2) that such animus motivated the defendants to enter into a conspiracy to (3) deprive that plaintiff of a constitutional or other federal right; (4) that a defendant committed an overt act in furtherance of that conspiracy; (5) resulting in injury to the plaintiff.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267 (1993); *United Bhd. Of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 426–27 (2d Cir. 1995).  The plaintiff must plead those elements with the same particularity required for common law claims of conspiracy. *Thomas*, 165 F.3d at 147; *Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir. 1993).

Turner has failed to plead the elements of a section 1985 claim.  As a threshold matter, Turner does not plead facts alleging that he is a member of a cognizable class within the meaning of section 1985.[17]  Instead, he alleges that defendants Lawlor and MacDonald were politically

---

17.  Case law recognizes a limited number of protected class categories, and the Second Circuit has recognized that class-based animus within the meaning of section 1985 may include animus based on an individual's race, national origin, religion, or gender.  *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1976) (gender/sex); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (limiting section 1985 to racial groups, "or perhaps other" protected classes); *Thomas*, 165 F.3d at 146 (religion); *see also Orshan v. Anker*, 489 F. Supp. 820, 823 (E.D.N.Y. 1980) (gathering cases); *Larkin v. Town of W. Hartford, Conn.*, 891 F. Supp. 719 (D. Conn. 1995) (animus on the basis of plaintiff's political beliefs not protected by section 1985), *aff'd*, 101 F.3d 109 (2d Cir. 1996).

opposed to Turner and that they initiated his arrest in an effort to infringe upon Turner's First Amendment right to free speech.  Significantly, individuals are not afforded protected class status under section 1985 on the basis of a desire to engage in specific conduct, nor do they receive protected status based on an allegation of discrimination on the basis of one's political views.  *Bray*, 506 U.S. at 268–70; *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir. 1989) ("those who are in political and philosophical opposition to [the defendants], and who are, in addition, outspoken in their criticism of the [defendants'] political and governmental attitudes and activities do not constitute a cognizable class under section 1985") (internal citation omitted).

In addition to pleading membership within a protected group, a plaintiff must plead that a defendant took action, at least in part, to harm an identifiable and protected group.  *Bray*, 506 U.S. at 271 (citing *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1976)); *Gleason*, 869 F.2d at 688; *see also Biswas v. City of New York*, 973 F. Supp. 2d 504 (S.D.N.Y. 2013), *appeal dismissed*, 576 F. App'x 85 (2014) (holding plaintiff's allegations that city employees devised a plan to arrest and prosecute a student were insufficient to state a section 1985 conspiracy claim because plaintiff had not alleged that such actions were motivated by racial animus).  That is, a defendant's actions against the plaintiff must be motivated by impermissible and invidious race- or class-based animus.  Turner alleges that the defendants were politically opposed to the views he espoused on his show, but such opposition is not animus of the type that section 1985 seeks to remedy.  Ultimately, Turner's allegations do not draw an adequate causal

---

Other federal appeals courts have reasoned that cognizable classes within the meaning of section 1985 should only include groups afforded suspect or quasi-suspect status under the Fourteenth Amendment's Equal Protection Clause, or by act of Congress identifying a class that may require special attention.  *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146–47 (11th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); *Shultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985); *see also Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104 (1st Cir. 2008) (political affiliation not a protected class); *Farber v. City of Patterson, N.J.*, 440 F.3d 131 (3d Cir. 2006) (same); *Grimes v. Smith*, 776 F.2d 1359 (7th Cir. 1985) (section 1985 does not reach "nonracial political conspiracies").

connection between the defendants' alleged animus and their actions to state a claim under section 1985(3).

Finally, Turner's factual allegations fail to set forth circumstances under which a reasonable jury could plausibly find the existence of a conspiracy to deprive Turner of his federal civil rights.  Turner has included numerous allegations that the defendants infringed upon his federal constitutional rights, but his allegations of a conspiracy are conclusory, generalized, and attenuated.  *See Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("conclusory or general allegations are insufficient" to state a claim for conspiracy to violate civil rights), *cert. denied*, 547 U.S. 1101 (2006); *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) (complaint with conclusory allegations of a conspiracy to deprive constitutional rights cannot survive a motion to dismiss).  Instead, Turner alleges that shadowy and secretive relationships and power dichotomies exist among the individuals who allegedly caused him harm, and that the asymmetry of power among those individuals gave rise to the allegedly tortious conduct in his complaint.  As noted, such allegations are deficient, and accordingly, Turner's section 1985 claim is dismissed against all defendants for failure to state a claim upon which relief can be granted.

G.  Futility of Amendment

When a plaintiff proceeds *pro se*, "the court should not dismiss [his complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal citations omitted).  Although district courts are encouraged to allow *pro se* parties to amend their pleadings "when justice so requires," the court should deny any motion to amend when an amendment would be futile; that is, when it would fail to cure the defects in the complaint.  Fed. R. Civ. P. 15(a)(2); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.

2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The allegations set forth in Turner's complaint, even if read liberally, are substantively deficient, and there is no information Turner could provide that would make his complaint viable. *Shemian v. Research in Motion Ltd.*, 570 F. App'x 32, 37 (2d Cir. 2014) (summary order) (citing *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (per curiam)). All of Turner's claims are barred by sovereign immunity, absolute immunity, qualified immunity, or statutes of limitation. There is no amendment to his pleadings that would cure the defects in his Amended Complaint, and as a result, any repleading would be futile. *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998) (citing *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990)). Accordingly, Turner's Amended Complaint is dismissed in its entirety with prejudice.

## IV.       Conclusion

For the reasons stated above, I grant the defendants' motion to dismiss in its entirety. The Clerk shall enter judgment for the defendants, dismiss this case and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 15th day of July 2015.

  /s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

49